[File No. 7089]

O. B. NISEWANGER, Respondent, v. W. J. LANE CO., a Corporation, Appellant.

(28 NW2d 409)

Opinion filed July 22, 1947.  Rehearing denied August 14, 1947

*Wattam, Vogel & Vogel,* appellant.

450

*Lanier & Lanier* and *Leo J. Kottas,* for respondent.

Burke, J. Plaintiff brought this action for damages for the alleged malicious prosecution of a civil action. A trial of the case resulted in a verdict and judgment against the defendant. Thereafter defendant moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and defend-

ant has appealed both from the judgment and the order denying the alternative motion.

For many years the defendant, W. J. Lane Company, a corporation, has been engaged in the business commonly described as real estate, loans and insurance at Fargo,. N. D. In the course of its business, it bought and sold real property both upon its own account and as a broker for its customers, it managed rental properties, it made and sold mortgage loans and acted as a selling agent for casualty insurance.

Business transactions between the defendant corporation and the plaintiff began sometime in the summer of 1931, when the plaintiff borrowed $800.00 from the defendant and gave as security for the repayment of the loan a mortgage upon residence property owned by him in the city of Fargo. At the same time defendant and plaintiff entered into an agreement whereby defendant was to manage the mortgaged property for the plaintiff. According to plaintiff, the terms of the agreement were that defendant was to run the property, collect the rents, and apply the proceeds of such collections (less a five percent commission) to the payment of interest upon the mortgage and the taxes on the property. The mortgage contained the usual acceleration clause which provided that upon any default in the payment of interest, taxes or principal, the mortgagee might, at his option, declare the full amount of such mortgage due.

Thereafter, at a time not disclosed by the record, defendant assigned the mortgage to Cassie V. Lough by a written assignment. This assignment was never recorded and in January, 1942, it was returned to the defendant by Thomas J. Lough, attorney in fact for Cassie V. Lough with instructions to execute a new assignment of the mortgage to Cassie V. Lough and Thomas J. Lough as joint tenants. This new assignment was executed and forwarded to the assignees upon January 28, 1942. It was not placed on record. In the meantime, however, the mortgagor had defaulted in the payments required by the mortgage. The defendant was chiefly concerned with the default with respect to the payment of taxes. As early as October 28, 1941, defendant wrote to the plaintiff:

"We haven't had a reply to our letter relative to the past due taxes . . . . In the meantime unless the taxes are taken care of, we expect to start foreclosure of the mortgage within the next thirty days. . . ."

In a letter dated December 9, 1941, defendant again called the default to the attention of the plaintiff, writing:

"We haven't had a reply to our last letter relative to you paying the delinquent taxes on your property. . . .

"The party holding the mortgage just wrote us a letter and we quote from his letter:

" 'I believe this mortgage should be foreclosed after giving the mortgagee one more opportunity to pay the delinquent taxes. Will you kindly notify Mr. Nisewanger that unless he pays the taxes within thirty days the mortgage will be foreclosed.' . . ."

On December 11, 1941, the plaintiff answered defendant's letters, inquiring the amount of the delinquent taxes, and asking if an arrangement could not be made whereby the mortgagee would accept part of the mortgaged property (a vacant lot) as payment of the mortgage.

On December 16, 1941, the defendant replied, stating that the delinquent taxes amounted to $476.50 and that the assignees were not interested in taking the vacant lot in payment of the mortgage. On February 12, 1942, the defendant notified the plaintiff that the owners of the mortgage had turned over the mortgage papers with instructions to start foreclosure and stated in their letter:

"How much of the taxes can you pay if you are not able to pay all of them at this time. You might advise us and we will take it up with the mortgage holder and we can stall this foreclosure off for a little longer time."

Although the letter is not in the record it is apparent that defendant wrote plaintiff on April 27, 1942, stating that if the taxes were paid, the owner of the mortgage would continue to carry the loan, for on May 1, 1942, plaintiff wrote to the defendant as follows:

"In reply to your letter of April 27, 1942, I note you state, that

if the taxes were paid, the mortgagee would carry the loan or make a new loan in the present amount.

I am endeavoring to negotiate a new loan in order to liquidate the present loan, and the prospects are favorable for doing so, but it will require some time to accomplish it.

Will you hold foreclosure proceedings in abeyance for one month to give me time to secure the loan, if it is possible to do so. . . ."

On May 5, 1942, defendant notified the plaintiff that it was impossible to hold up the foreclosure proceedings but if the plaintiff was able to sell, make a new loan or raise the money to pay the taxes, the foreclosure proceedings would be dropped.

In the meantime defendant had also been corresponding with Thomas Lough, one of the assignees of the mortgage, an attorney in fact, for the other assignee. On February 4, 1942, Mr. Lough forwarded the note and mortgage to the defendant with directions to start foreclosure proceedings promptly. By a letter dated February 10, 1942, the defendant inquired of Mr. Lough if he wished the foreclosure started in the name of W. J. Lane Co. On February 24, 1942, Mr. Lough replied, directing foreclosure in the name of W. J. Lane Co.

On May 5, 1942, the foreclosure action was commenced in the name of W. J. Lane Co., as plaintiff. Judgment dismissing the foreclosure action upon the ground that W. J. Lane was not the owner of the mortgage and therefore not the real party in interest was thereafter entered. Upon the basis of the stated facts Mr. Nisewanger brought the instant action for malicious prosecution. In order to maintain this action, the burden was on the plaintiff to establish at the trial thereof that the defendant, W. J. Lane Co., had instituted the foreclosure action against him maliciously and without probable cause, 34 Am Jur 706, Malicious Prosecution; 38 CJ 386.

In submitting the case to the jury at the trial the trial judge instructed that the evidence did establish want of probable cause. Error is specified upon this instruction.

Where the facts are undisputed as they are in this case, the question of the existence of probable cause is a question of law

for the court. Kolka v. Jones, 6 ND 461, 71 NW 558, 66 Am St Rep 615. The defendant contends, however, that the admitted facts are sufficient to establish probable cause as a matter of law. Generally, it may be said that a litigant has probable cause for commencing suit if he believes and has reasonable ground to believe that his action and the means taken in prosecuting it are legally just and proper. 34 Am Jur 732, Malicious Prosecution, § 47; 38 CJ 417. In this case the question is somewhat different from that usually encountered in cases of this nature for here there is no question whatever as to the existence of a cause of action nor as to the means taken to prosecute it. Here the question is whether W. J. Lane Co., through its officers, believed and had reasonable grounds for believing that it was a proper party plaintiff to maintain an action which was meritorious in its substance and proper in its nature. The plaintiff urges that the adverse final judgment given in the foreclosure action bars inquiry into that question. He says that such inquiry would amount to a collateral attack upon that judgment. In this he is clearly wrong. An adverse judgment and want of probable cause are several elements of a cause of action for malicious prosecution. If an adverse judgment conclusively imported want of probable cause, it would in fact eliminate want of probable cause as an element of the tort. The question of probable cause for the institution of a civil action may be examined in the face of an adverse judgment even where the judgment was grounded upon a question of law alone. In the American Law Institute, Restatement, Torts, Vol 3, § 675, Comment e, it is said:

"In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication. To this extent the rule implicit in Sec. 662 that a mistake of law, unless under the advice of counsel, does not afford probable cause, is inapplicable."

Thus, while we consider it finally adjudged that defendant was not a proper party plaintiff in the foreclosure action, we may consider the question of law upon which that judgment

turned for the purpose of determining whether defendant had reasonable grounds for believing the judgment might have been favorable to him.

Upon the facts it is clear that the assignees of the mortgage delivered the note and mortgage to the mortgagee with instructions to foreclose the mortgage in the mortgagee's name. It is clear that the assignees intended to give authority to the mortgagee to foreclose or in other words to give the mortgagee sufficient title to foreclose. It is also clear that the mortgagee believed, through its officers, that it had proper authority or title to maintain the foreclosure action. It may be that both the assignees and the mortgagee, being unversed in the law, were not aware of the fact that authority required title. We consider this possibility immaterial if the manner in which the authority was conferred either gave sufficient title or raised a close legal question as to whether such title had been given, for in either event there would have been reasonable grounds for the mortgagee's belief that he had legal right to institute the foreclosure action.

The question then is: Did the delivery, by the assignees, of the note and mortgage to the mortgagee with instructions to foreclose in the mortgagee's name give sufficient title for that purpose or raise a close legal question as to whether such title had been given.

The note was payable to the order of W. J. Lane Co. Presumably it was endorsed by W. J. Lane Co. when it was assigned. Whether it was endorsed in blank or endorsed to the order of the assignee, we do not know. It is not important that we should, for the owner in either case could transfer title to the note and mortgage by delivery. 10 CJS 717. And such transferee could bring suit in his own name. 10 CJS 1171. For delivery to constitute a transfer an express or implied intent to constitute the transaction a transfer must be shown. 4 Am Jur 299, Assignments, § 85. Here the delivery of the note and mortgage was accompanied by instructions to foreclose. There is no question but that the assignee intended to retain the entire beneficial interest in the note and mortgage but do not the

instructions to foreclose imply an intention to transfer a sufficient legal title to foreclose, if such transfer can be consistent with the assignees' retention of the entire beneficial interest? Upon this question we have little doubt. While our statute provides that every action shall be prosecuted in the name of the real party in interest (Rev Code 1943 § 28–0201) it has long been the law of this state that the assignee of a chose in action who holds the legal title to it may maintain an action thereon, as the real party in interest, under the Code, although he holds only the naked legal title, the whole beneficial interest being in the assignor. Seybold v. Grand Forks Nat. Bank, 5 ND 460, 67 NW 682. Whether the delivery of the note and mortgage accompanied by instructions to foreclose operated to transfer that bare legal title to the recipient we do not need to decide. The contention that the transaction taken as a whole properly implies such a result is to our minds based upon reasonable grounds. The evidence therefore shows a reasonable basis for the plaintiff's belief that the foreclosure action was legally just and proper. Probable cause for the institution of that action is therefore established. Since our conclusions upon this question determine the action there is no need to consider the other specifications of error. The judgment of the district court is reversed and the action ordered dismissed.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.

BURKE, J. (On petition for rehearing). Plaintiff has filed a petition for a rehearing in which he contends that there is conflicting evidence upon the question of whether the defendant knew it "was doing anything wrong when it foreclosed a mortgage, the title to which it did not even own" and that a jury should have an opportunity to pass on this issue upon another trial of the case.

It is apparent plaintiff has misconstrued the effect of the decision in the case. In the decision we held that the legal question with respect to title to the mortgage was such, prior to

the entry of the adverse judgment upon this question, that defendant was warranted in anticipating that this issue would be resolved in its favor and therefore it committed no legal wrong in instituting and maintaining the foreclosure action. The petition is denied.

CHRISTIANSON, Ch. J., and NUESSLE and BURR, JJ., concur.

MORRIS, J., not participating.